IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES RUEDON DAVIDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:12-CV-1078-WKW |
| v. | ) | [WO] |
| | ) | |
| JACOB MITCHELL HODGES, | ) | |
| *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Benny Hodges's renewed motion for summary judgment (Doc. # 39) on the state-law claim alleging that he negligently entrusted his Dodge truck to his adult son, Jacob, who rear-ended a vehicle, injuring its driver, Plaintiff Charles Ruedon Davidson. The motion is opposed and is due to be denied. The related motions to strike Mr. Hodges's admittedly inaccurate affidavit testimony (Docs. # 49, 53) are due to be denied as moot.

## A.   Material Facts

On November 2, 2010, 28-year-old Jacob Hodges faced a dilemma. He could ask his father with whom he lived for money to fill up his Ford truck, which was "low on gas," or he could stealthily take the key to the 1997 Dodge Ram pickup truck ("the Dodge"), owned by his father.[1] (Jacob's Dep. 46.) The problem

---

[1] Jacob has lived with his parents in their home his whole life. On this day, Jacob needed to drive from his home in Donalsonville, Georgia, to a clinic in Dothan, Alabama, to receive methadone treatment for a drug addiction.

with the second alternative was that his father expressly had forbidden him not on just one occasion, but on many, from ever driving the Dodge truck on a public roadway.[2]   For one thing, as Jacob knew, his father's automobile insurance policy expressly excluded coverage to Jacob on the basis of his poor driving record, and, for another, as his father had told him, the Dodge truck's power steering was not working, and the front end was out of alignment.

But on November 2, the key to the Dodge dangled ever so invitingly on the communal key rack above the stove in the kitchen.   And although Jacob had resisted the temptation to take the key and disobey his father, this day the temptation proved more than Jacob could resist.   He got the key from the key rack and drove off in the Dodge truck.   Jacob soon would regret having tempted fate because, as fate would have it, Jacob promptly wrecked his father's Dodge truck, injuring Plaintiff as a consequence.   These are the facts viewed in the light most favorable to Plaintiff, the non-moving party, and they derive from the deposition testimony of Mr. Hodges and Jacob.   *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010) (reiterating that on a summary judgment motion, the evidence and its inferences are viewed in the light most favorable to the nonmovant).

---

[2] Jacob's father had permitted him to drive the Dodge truck in the yard for the purpose of washing it, but that was it, and Jacob knew those limits.  How Jacob got the key on those occasions is not clear from the record.

**B.**    **Motions to Strike**

When Mr. Hodges filed his summary judgment motion, he had not yet been deposed, and he did not report the facts exactly as set out above.  Rather, Mr. Hodges submitted his own affidavit in which he attested that he had hidden the main key to the Dodge truck from Jacob and that "apparently Jacob" had found the spare key that Mr. Hodges kept in a toolbox.  (Mr. Hodges's Aff. 2.)  At his deposition, which occurred a week after Mr. Hodges had filed his summary judgment motion, Mr. Hodges admitted that his attestation that he had hidden the main key was "not accurate."  (Mr. Hodges's Dep. 21.)  In fact, he had not hidden the main key at all.  Rather, the key hung in plain sight on the family's key rack in the kitchen.  Mr. Hodges blamed this inaccuracy on his "memory," which "is not worth a hoot," and on the fact that perhaps he was confused because he "think[s] [he] had actually hidden the keys to" Jacob's Ford truck "a time or two" when he "got fed up with buying gas for [Jacob] every day."  (Mr. Hodges's Dep. 26.)

On the basis of the admitted misstatements in the affidavit, Plaintiff and Defendant QBE Insurance Corporation[3] ("QBE") have moved to strike Mr. Hodges's affidavit under the sham affidavit rule.  *See Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986) (discussing the sham affidavit rule).  Although Mr. Hodges has made several procedural and substantive arguments

---

[3] A QBE policy provided uninsured motorist coverage on the vehicle Plaintiff was driving on the day of the accident.

against the rule's application, he has admitted at the same time that certain material attestations in his affidavit are not true; thus, Mr. Hodges effectively has conceded that his affidavit testimony is "inherently inconsistent" with his deposition testimony, at least in some material respects. *Id.* at 954. Based on Mr. Hodges's admission, the "inaccurate" statements in his affidavit have not been considered in determining whether there is a genuine dispute of material fact on the negligent entrustment claim. It is not necessary to decide, however, whether the statements' exclusion is the result of application of the sham affidavit rule or some other authority. Accordingly, the motions to strike will be denied as moot.

## C.   <u>Motion for Summary Judgment</u>

Mr. Hodges's sole challenge to the negligent entrustment claim contests that there was an entrustment. Under Alabama law, "when one person drives a car belonging to another, a rebuttable presumption of entrustment . . . arises when ownership is established; [t]hus, the owner of the vehicle is faced with a substantial burden in order to disprove an entrustment." *Edwards v. Valentine*, 926 So. 2d 315, 320 (Ala. 2005) (internal quotation marks and emphasis omitted). Entrustment can include (1) "actual entrustment," (2) "continuing consent to use the vehicle," or (3) "leaving the vehicle available for use." *Id.* "A case of entrustment by 'leaving the vehicle available for use' may occur, even though the entrustor has not given permission to use the vehicle on a particular occasion *and*

*may even have expressly refused it*." *Id.* (internal alterations omitted).   To establish entrustment under the available-for-use theory, the entrustor must have known or had "reason to know that the particular incompetent involved in the accident was likely to use the vehicle without authorization and that the entrustor failed to take reasonable precautions to prevent such unauthorized use." *Id.* (citations and internal quotation marks omitted); *see also Penland v. Allsup*, 527 So. 2d 714, 716–17 (Ala. 1988) (framing the available-for-use theory as one of foreseeability).

Plaintiff and QBE collectively argue that there is a genuine dispute of material fact as to all three entrustment theories.  They contend, therefore, that Mr. Hodges's summary judgment motion must be denied.  These theories are addressed below.

### 1.   *Available for Use*

With respect to the available-for-use theory, on one hand, there is undisputed evidence that Mr. Hodges never gave Jacob express permission to drive the Dodge truck on a public roadway and explicitly told Jacob not to drive it.  On the other hand, *Edwards* establishes that the owner's express refusal to grant permission is not dispositive, and it is undisputed that Mr. Hodges permitted Jacob some use, *albeit* limited, of the Dodge truck, as Mr. Hodges permitted Jacob to drive the truck from its parked position to the yard so that Jacob could wash it.

Significantly, Mr. Hodges admits, having recanted his prior attestation to the contrary, that he left the main key to the Dodge truck hanging with the family's other keys on a key rack in the kitchen. There is no dispute that Jacob, who lived at home with his parents, had ready access to the Dodge truck key. On these facts, there is evidence from which a reasonable jury could find that Mr. Hodges did not take reasonable precautions to prevent Jacob's use of the Dodge truck.

As to whether Mr. Hodges had reason to know that Jacob was likely to use the vehicle without his permission, Mr. Hodges personally did not believe that Jacob would. After all, Mr. Hodges had given Jacob repeated and harsh instructions that the Dodge truck was off limits, and he believed that his instructions were sufficient. But Plaintiff and QBE also point out that Mr. Hodges knew that in general on other matters, he would tell Jacob "not to do certain things," but Jacob would "do[ ] [them] anyway," and that Jacob needed periodic "reminding." (Mr. Hodges's Dep. 36, 45.) Hence, upon further probing, Mr. Hodges admitted that there was a possibility that Jacob would drive the Dodge truck. (Mr. Hodges's Dep. 45–47.) A possibility is not the same thing as a likelihood, however, and whether the facts in their totality create a genuine dispute of material fact as to whether Mr. Hodges had reason to know that Jacob was *likely* to use the Dodge truck is a close question.

Plaintiff contends that the evidence in this case is comparable in weight to the evidence in *Edwards*, which involved a negligent entrustment claim tried on an available-for-use theory.  In *Edwards*, there was evidence that the truck's owner had permitted his brother-in-law, who lived next door, to drive the truck, however warning him that if he wrecked the truck, he should claim that he had stolen it. Additionally, on the day the brother-in-law wrecked the truck, he had entered the owner's home and retrieved the keys from a dresser or table, "as he had occasionally done in the past."  *Edwards*, 926 So. 2d at 321 (emphasis omitted). The Alabama Supreme Court held that "the evidence was sufficient for the court to conclude that [the owner] left the vehicle available for [his brother-in-law's] use on the date of the accident."  *Id.*  This court is not as convinced as Plaintiff is that the facts here are as strong as those in *Edwards*, but the court is reluctant to conclude that the evidence here is not enough to create a genuine dispute of material fact on the issue, especially given the "substantial burden" that Mr. Hodges bears to overcome the presumption and "disprove an entrustment."  *Id.* at 320.[4]

In sum, admittedly, the summary judgment evidence presents a close call as to the available-for-use theory of proving an entrustment; however, the court concludes that at this juncture, the evidence, viewed in the light most favorable to Plaintiff, raises a genuine dispute of material fact regarding whether Mr. Hodges

---

[4]  It should be noted also that *Edwards* did not arise in the summary judgment context, as does this case, but rather on appeal from a verdict after a non-jury trial.

left the Dodge truck available for Jacob's use, knowing that Jacob likely would use it.

**2.      *Actual or Continuing Consent***

The gist of the argument with respect to the actual and continuing consent theories is that the discrepancies between Mr. Hodges's affidavit and deposition testimony cast a cloud on the reliability of all of Mr. Hodges's testimony.  In other words, because Mr. Hodges admits that some of his affidavit statements are inaccurate, all of his testimony – including his testimony that he never gave Jacob permission to drive the Dodge truck on a public roadway – could be inaccurate, and, therefore, none of his testimony should be relied upon at the summary judgment stage.

The court declines the implied invitation to opine on whether Mr. Hodges intentionally made inaccurate statements in his affidavit that permeate the reliability of his testimony as a whole.   Nevertheless, the statements were at minimum false, and on this record, there are reasons that persuade the court that the "better course [is] to proceed to a full trial" on all potential theories for establishing an entrustment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 n.5 (2d Cir. 2006) (noting that "in some instances it may be more appropriate to overturn a

jury verdict after trial than to grant summary judgment beforehand").  Accordingly, the renewed motion for summary judgment is due to be denied.

**D.**     **Conclusion**

For the foregoing reasons, it is ORDERED that Defendant Benny Hodges's renewed motion for summary judgment (Doc. # 39) is DENIED and that the motions to strike (Docs. # 49, 53) are DENIED as moot.

DONE this 4th day of March, 2014.

_____
/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE
